[Cite as *Borer v. Borer*, 2009-Ohio-6522.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

KELLY S. BORER,

     PLAINTIFF-APPELLEE,               CASE NO. 13-09-24

     v.

CHARLES J. BORER,                  O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 03-DR-0419

Judgment Affirmed

Date of Decision:    December 14, 2009

APPEARANCES:

    *Charles R. Hall, Jr.* for Appellant

    *Richard A. Kahler and Jim Fruth* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Charles Borer, appeals from the judgment of the Court of Common Pleas of Seneca County, Domestic Relations Division, overruling his objections and adopting the magistrate's decision requiring him to pay $300 per month in spousal support, refusing to impute additional income to Plaintiff-Appellee, Kelly Borer, and ordering him to pay eighty percent of the children's unpaid medical expenses after his initial $100 obligation, and sustaining his objection to the magistrate's order of child support, ordering a fifty-percent deviation from the child support worksheet under R.C. 3119.022 and directing him to pay $276 per month in child support. On appeal, Charles argues that the trial court erred in upholding the magistrate's decision to grant a fifty-percent deviation in child support, and in ordering him to pay Kelly $300 per month in spousal support. Based on the following, we affirm the judgment of the trial court.

{¶2} In December 2003, Kelly filed a complaint for divorce from Charles. The Borers are the parents of three children, Jacob Borer (D.O.B. 6/10/90), Riley Borer (D.O.B. 7/18/93), and Olivia Borer (D.O.B. 10/15/95) (Jacob, Riley, and Olivia collectively referred to as the "children").

{¶3} In April 2005, pursuant to the agreement of the parties, the trial court entered a consent agreement order stating that Kelly's income is less than minimum wage and that she has no health insurance that covers the children that is

available to her at a reasonable price; that the parties agree to abide by a shared parenting plan with the children to reside with each parent one week at a time; that Charles agrees to provide health insurance benefits for the children; that Kelly is entitled to one-half of the marital portion of Charles' retirement benefits; that Charles must pay sixty-five percent and Kelly must pay thirty-five percent of all uncovered health expenses incurred on behalf of the children; and, that Charles shall begin paying child support immediately, with a fifty-percent deviation from the amount of child support calculated under the worksheet pursuant to R.C. 3119.022 due to the shared parenting plan and the fact that the children spend equal time with both parents.  The order further provided that "[n]o agreement has been reached as to spousal support payments and income that should be attributed to Kelly Borer for child support calculation purposes."  (Apr. 2009 Consent Agreement Judgment Entry, p. 3).

{¶4}  In July 2005, the magistrate entered an order of divorce, stating that the parties shall abide by a shared parenting plan; that Kelly is entitled to one half of the marital portion of Charles' retirement benefits; that Charles was the primary income provider for the family and that Kelly was primarily responsible for the daily care of the children; that Kelly worked numerous part-time jobs during the marriage while Charles maintained full-time employment; that, since the divorce, Kelly obtained employment at a rate of $11 per hour and worked thirty to forty

hours per week, but that she was terminated from the employment after about three months due to a newly enacted company policy; that she was not fired for stealing or failing to show up for work, and that she did not intend to be fired; that Kelly has been unable to find comparable employment that permits her to provide for her children's needs at the same pay rate; that her income earned while working for those three months is not indicative of her earnings during the marriage; that her income from that position should not be the basis of determining her income for child support purposes; that Kelly began operating a cleaning business providing her $10,421 per year; that the court will impute minimum wages to her of $10,712 per year, as no evidence has been provided that she refused to work or that she is unable to earn minimum wage income; that Charles' spousal support obligations will be calculated based upon his yearly income of $40,072; that the court has considered the factors contained in R.C. 3105.18 in determining spousal support; and, that Charles must pay Kelly $300 per month in spousal support for a period of eight years.

{¶5} Additionally, the magistrate stated that the imposition of a child support obligation based on support calculated pursuant to the child support worksheet would be unjust, inappropriate, and not in the best interests of the children based on a review of the financial and other circumstances of the parties and the criteria under R.C. 3113.215(B)(3), and ordered a fifty-percent deviation

from the child support worksheet due to the parties spending equal time with the children, with Charles to pay the sum of $407.07 per month.

{¶6} In August 2005, Charles filed objections to the magistrate's decision, arguing, in part, that the magistrate erred in ordering a fifty-percent deviation from the child support worksheet; that the magistrate's imputed income to Kelly was contrary to the evidence; and, that the magistrate erred in her order of spousal support.

{¶7} In July 2006, the trial court overruled Charles' objections to the magistrate's decision, stating that a fifty-percent deviation from the child support worksheet was appropriate, as he agreed to the deviation in the consent agreement; that Kelly's imputed income was accurate, as Charles presented no evidence that she could earn a higher amount from her cleaning business or that she refused work, and the evidence established that she was terminated from her prior employment due to technical violations; and, that the award of spousal support was correct, as the magistrate's decision was based on the evidence presented of the parties' income and was in accordance with the law.

{¶8} In August 2006, this Court dismissed Charles' appeal for lack of a final appealable order, as the judgment entry failed to contain a decree of divorce and a shared parenting decree.

{¶9} In September 2006, the trial court filed a decree of divorce and a shared parenting decree, and Charles subsequently appealed the trial court's judgment.

{¶10} In July 2007, in *Borer v. Borer*, 3d Dist. No. 13-06-38, 2007-Ohio-3341, this Court affirmed in part, and reversed in part, the judgment of the trial court, finding that, although the magistrate "found that the imposition of the child support amount calculated pursuant to the child support schedule would be unjust, inappropriate, and not in the best interest of the minor children as required by R.C. 3119.24," the court did not consider the child support that Kelly should pay when the children are with Charles in determining Charles' child support obligation. Id. at ¶9. Accordingly, we remanded to the trial court for a recalculation of the amount of child support, or for the trial court to make findings as to why recalculation is not appropriate. Furthermore, we did not consider Charles' argument that the trial court erred in the amount of spousal support awarded Kelly, as the trial court's review of the child support calculation could affect the issue of spousal support.

{¶11} In November 2007, the magistrate issued a decision modifying her July 2005 decision, stating that the parties shall abide by the shared parenting plan; that she considered the factors contained in R.C. 3105.18 to determine the appropriateness of spousal support, including the income and retirement benefits

of the parties, the duration of the marriage, and the standard of living established during the marriage, and ordering that Charles pay Kelly $300 per month in spousal support for eight years. Additionally, the magistrate stated that Kelly's current income for child support purposes is $10,112.13 based upon her new cleaning business; that an additional $3,600 shall be included in her income for child support purposes based upon her receipt of spousal support; that a fifty-percent deviation from the child support guidelines is appropriate based upon the agreement of the parties and that the children spend equal time with each party; that Kelly has an annual obligation to pay Charles $3,309.33 based on shared parenting; that Charles has an annual obligation to pay Kelly $9,122.56; that deviating fifty percent from the annual obligation of each party, and then offsetting the child support of one party from the other, Charles has an annual child support obligation of $2,906.61; that Charles must pay $247.06 per month in child support, including processing fees; that the court has undertaken a review of the financial and other circumstances of the parties and the criteria under R.C. 3113.215(B)(3)[1] in determining the imposition of a child support obligation; and, that the calculations in the child support worksheet would be unjust, inappropriate,

---

[1] Although the magistrate stated that she considered R.C. 3113.215(B)(3) in determining Charles' child support obligation, this statute was repealed in 2001. However, despite this mistake, the magistrate made the proper findings for a deviation from the child support worksheet pursuant to R.C. 3119.24

and not in the best interest of the minor children, and, therefore, a deviation from the child support guidelines is necessary and appropriate.

{¶12} Subsequently, Kelly filed an objection to the magistrate's decision, arguing that a reduction in the amount of child support from $407.07 per month, as stated in the magistrate's July 2005 decision, to $247.06 per month was not appropriate and not in the best interest of the children.

{¶13} Additionally, Charles filed objections to the magistrate's decision, arguing, in part, that the magistrate's deviation from the child support worksheet was inappropriate, and that the magistrate's award of spousal support and her finding on Kelly's income and the income from Kelly's business was contrary to the evidence. Specifically, Charles argued that the evidence presented demonstrated that the earning potential of the parties was equal; that Kelly refused work; and, that Kelly was under-employed, thereby requiring the magistrate to impute to her a higher wage amount. Furthermore, Charles also argued that the order of spousal support was inappropriate because the magistrate did not properly account for Kelly's entitlement to a portion of his retirement benefits.

{¶14} In March 2008, the trial court filed an order referring the case back to the magistrate for a clarification of paragraphs thirty three and thirty four of her November 2007 decision, pertaining to child support and the children's medical expenses.

{¶15} In April 2008, the magistrate issued a decision correcting paragraphs thirty three and thirty four of the November 2007 decision, stating, in part, that the parties agreed that a fifty-percent deviation from the child support worksheet would be appropriate, as the children spend equal time with both parties; that Kelly has an annual obligation to pay Charles $2,545.21 based on shared parenting; that Charles has an annual obligation to pay Kelly $9,657.40; that Charles' cost to provide health insurance for the minor children is allocated between the parties according to their percentage of income, with Kelly paying twenty percent and Charles paying eighty percent, resulting in $79.33 being added to Kelly's child support obligation for her share of health insurance, and the same amount being deducted from Charles' child support obligation; that Charles shall have an annual child support obligation of $4,789.04, based on a fifty-percent deviation from the annual obligation of each party; that this annual child support obligation results in a monthly payment of $407.07, including processing fees; and, that the court has undertaken a review of the financial and other circumstances of the parties and criteria under R.C. 3113.215(B)(3) and has determined that the child support obligation based on the support calculated pursuant to the child support worksheet would be unjust, inappropriate, and not in the children's best interest, and, therefore, that a deviation from the child support worksheet is necessary and appropriate in this case.

{¶16} In July 2009, the trial court overruled Charles' objections to the magistrate's order of spousal support and the income imputed to Kelly for child support purposes, but sustained the objection to the magistrate's order of child support, stating the following in its decision:

> **The Court has undertaken an independent review of the financial circumstances of the parties and the criteria set forth in R.C. § 3119.24, 3119.022, and 3109.04. The Court finds, that since each parent spends approximately 50% of the time with the minor children, the amount of $814.13 per month as shown on Exhibit A (Child Support Computation Worksheet) is unjust and inappropriate, <u>and</u> not in the best interest of the minor children. In making the deviation herein, this Court has considered the child support Mother should pay when the children are with Charles. That amount has been factored into the deviation in this case as shown on Exhibit B (Child Support calculations for deviation due to residential time allocation Worksheet). The Court further has considered the spousal support paid by Father to Mother. R.C. § 3119.24(B)(4). Since both parties agree to a 50% deviation and since such deviation is based on the amount of time the children spend with each parent, the Court is allowing a 50% deviation from the child support guidelines in R.C. § 3119.022. The Court is setting off Mother's child support obligation amount from Father's child support obligation amount to arrive at the annual net obligation of $3,321.45. Father shall pay Mother, as and for current support, commencing on April 22, 2005, the sum of $276.70 per month for the support of the three minor children plus processing fees.**

(July 2, 2009 Judgment Entry, pp. 2-3).

{¶17} On the same date, the trial court filed a judgment entry adopting the magistrate's decision as to shared parenting, Charles' spousal support obligation, the income imputed to Kelly for child support purposes, and the parties'

responsibilities for the children's health care expenses, and modifying the magistrate's decision relating to child support, as stated in its first decision.

{¶18} It is from this judgment that Charles appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S DECISION AS TO GRANTING ONLY A FIFTY PERCENT DEVIATION IN CHILD SUPPORT.**

### *Assignment of Error No. II*

**THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S DECISION IN ORDERING SPOUSAL SUPPORT.**

### *Assignment of Error No. I*

{¶19} In his first assignment of error, Charles argues that the trial court erred in upholding the magistrate's decision to grant a fifty-percent deviation from the child support computation worksheet. Specifically, he contends that, although the trial court considered the amount of child support that Kelly must pay when the children are with him, as mandated by this Court, a fifty-percent deviation is still inappropriate because the children are residing with both him and Kelly for an equal amount of time. We disagree.

{¶20} An appellate court reviews the trial court's grant of child support under an abuse of discretion standard. *Fox v. Fox*, 3d Dist. No. 5-03-42, 2004-

Ohio-3344, ¶11, citing *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶21} When issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02; see, also, *O'Conner v. O'Conner*, 3d Dist. No. 12-09-04, 2009-Ohio-5436, ¶9. Additionally, R.C. 3119.03 creates a rebuttable presumption that the amount of child support calculated through the child support schedule and the applicable worksheet is the correct amount of support due. *Fox*, 2004-Ohio-3344, at ¶12.

{¶22} R.C. 3119.24 governs an award of child support when there is a shared parenting order. It provides as follows:

> **(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of**

**the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.**

**(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.**

**(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:**

**(1) The amount of time the children spend with each parent;**

**(2) The ability of each parent to maintain adequate housing for the children;**

**(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;**

**(4) Any other circumstances the court considers relevant.**

{¶23} Furthermore, R.C. 3119.23 sets forth sixteen factors for the trial court to consider in determining whether to grant a deviation pursuant to R.C. 3119.24, including the following:

**(C) Other court-ordered payments;**

**(D) Extended parenting time or extraordinary costs associated with parenting time * * *;**

**\* \* \***

**(G) Disparity in income between parties or households;**

**\* \* \***

**(K) The relative financial resources, other assets and resources, and needs of each parent;**

**\* \* \***

**(P) Any other relevant factor.**

R.C. 3119.23(C), (D), (G), (K), (P). However, the trial court's consideration of the factors set forth in R.C. 3119.23 in deviating from the child support worksheet is not mandatory, but merely discretionary. *Ramey v. Ramey*, 5th Dist. No. 08-CA-38, 2009-Ohio-2909, ¶38.

**{¶24}** As stated in R.C. 3119.24(A)(2), the trial court must set forth the extraordinary circumstances or other criteria in the judgment entry when deviating from the child support order calculated under the schedule and worksheet pursuant to R.C. 3119.022. *Ayers v. Haas*, 3d Dist. No. 15-07-13, 2008-Ohio-2405, ¶21. However, it is not mandatory that the trial court deviate from the schedule and worksheet, Id., citing *Womack v. Womack,* 3d Dist. No. 5-2000-24, 2001-Ohio-2146, and "a parent 'is not automatically entitled to a downward deviation merely because a factor is present.'" *Hills v. Patton*, 3d Dist. No. 1-07-71, 2008-Ohio-1343, ¶33, quoting *Lopez v. Coleson,* 3d Dist. No. 12-05-24, 2006-Ohio-5389, ¶9. Furthermore, a shared parenting plan does not automatically entitle a party to a

set-off or credit for time spent with the children under the plan. *Ayers*, 2008-Ohio-2405, at ¶21, citing *Pauly,* 80 Ohio St.3d at 388-90.

{¶25} In the case sub judice, the trial court modified the magistrate's order of a fifty-percent deviation from the child support calculated under the worksheet pursuant to R.C. 3119.022, and Charles claims that the trial court erred in ordering this fifty-percent deviation. However, he sets forth no argument as to why the court erred other than a statement that the children are residing with the parties for an equal amount of time.

{¶26} In examining the trial court's judgment entry, we find there to be no error in the deviation order, as the trial court made the required findings pursuant to R.C. 3119.24 in order to deviate from the amount of child support calculated under the worksheet. In ordering the deviation, the trial court stated that the children spend an equal amount of time with each parent; that it had reviewed the financial circumstances of the parties and the criteria set forth in R.C. 3119.24; that the amount of child support computed under the worksheet was unjust, inappropriate, and not in the best interest of the children; and, that it had considered the child support that Kelly must pay when the children are with Charles, and the spousal support paid by Charles to Kelly. Although the trial court did not specifically set forth the factors contained in R.C. 3119.23, no such consideration is required in ordering the deviation.

{¶27} Moreover, we find that the trial court properly complied with this Court's previous order to consider the amount of child support that Kelly must pay when the children are with Charles, and that the parties had previously agreed to a fifty-percent deviation under the April 2005 consent agreement judgment entry. As such, Charles cannot now complain of the trial court's fifty-percent deviation order when he previously agreed to such order.

{¶28} Accordingly, because the trial court made the required findings under R.C. 3119.24 that the amount of child support calculated in accordance with the schedule and worksheet was unjust, inappropriate and not in the best interest of the children; because the trial court considered the amount of support that Kelly must pay when the children are with Charles; because the children reside with the parties for an equal amount of time; and, because the parties agreed to a fifty-percent deviation, we find that the trial court did not abuse its discretion in ordering a fifty-percent deviation from the child support worksheet calculation.

{¶29} Accordingly, Charles' first assignment of error is overruled.

*Assignment of Error No. II*

{¶30} In his second assignment of error, Charles argues that the trial court erred in adopting the magistrate's decision as to spousal support. Specifically, he contends that the magistrate did not properly analyze the evidence presented

relating to spousal support, and that she did not account for Kelly's entitlement to a share of his retirement benefits in ordering support. We disagree.

**{¶31}** We review a trial court's determination on spousal support under an abuse of discretion standard, as set forth in our disposition of Charles' first assignment of error. *Siekfer v. Siekfer*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶15, citing *Heitzman v. Heitzman,* 3rd Dist. No. 3-05-11, 2005-Ohio-4622, ¶3.

**{¶32}** R.C. 3105.18 governs the trial court's award of spousal support and requires the court to consider fourteen factors set forth in R.C. 3105.18(C)(1) when determining whether spousal support is appropriate and reasonable, and when determining the nature, amount, terms of payment, and duration of the support. *Schalk v. Schalk*, 3d Dist. No. 13-07-13, 2008-Ohio-829, ¶28, citing *Lee v. Lee,* 3d Dist. No. 17-01-05, 2001-Ohio-2245. The factors are as follows:

> **a)** **The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
>
> **(b)** **The relative earning abilities of the parties;**
>
> **(c)** **The ages and the physical, mental, and emotional conditions of the parties;**
>
> **(d)** **The retirement benefits of the parties;**
>
> **(e)** **The duration of the marriage;**
>
> **(f)** **The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**

**(g)   The standard of living of the parties established during the marriage;**

**(h)   The relative extent of education of the parties;**

**(i)   The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(j)   The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(k)   The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(l)   The tax consequences, for each party, of an award of spousal support;**

**(m)   The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(n)   Any other factor that the court expressly finds to be relevant and equitable.**

R.C. 3105.18(C)(1)(a)-(n).

**{¶33}** Although the trial court must consider all of these factors, it is not required to specifically enumerate all of the factors. *Hendricks v. Hendricks*, 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶31, citing *Schalk*, 2008-Ohio-829, at ¶28. However, the trial court must "make specific findings in order 'to enable a reviewing court to determine the reasonableness of its order to grant or deny a

request for spousal support and that the relevant factors within R.C. 3105.18 were considered.'" *Malloy v. Malloy*, 3d Dist. No. 8-08-15, 2009-Ohio-1918, ¶11, citing *Hendricks*, 2008-Ohio-6754, at ¶31.

**{¶34}** Furthermore, retirement benefits acquired during the course of a marriage are a marital asset and must be equitably divided between the parties in a final judgment of divorce. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178; *Dindal v. Dindal*, 3d Dist. No. 5-09-06, 2009-Ohio-3525, ¶6. "Although an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable." *Shaffer v. Shaffer,* 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶25.

**{¶35}** Here, the trial court overruled Charles' motion objecting to the magistrate's award of spousal support and adopted the magistrate's recommendation. In the magistrate's decision awarding spousal support to Kelly in the amount of $300 per month, she stated that she had considered the factors contained in R.C. 3105.18 to determine whether spousal support was appropriate, and that she specifically considered the income of the parties, including Kelly's income of $10,421 and Charles' income of $40,072.91, the retirement benefits of the parties, with Kelly having no entitlement to retirement benefits and Charles having retirement benefits through his employer, the twenty-year duration of the marriage, and the standard of living established during the marriage.

{¶36} Furthermore, the magistrate also stated in the decision that Charles was the primary income provider for the family and Kelly was primarily responsible for taking care of the children during the duration of the marriage; that Kelly was entitled to one-half of the marital portion of Charles' retirement benefits for the period of November 19, 1983 through December 12, 2003; that, in determining the facts of the case, she considered all the evidence of the parties; that, in making specific findings of fact, she has set forth the factors relevant to the determination of the issues as well as specific factors required to be considered by statute; and, that the lack of a specific finding is not an indication that the fact was not considered.

{¶37} In examining the magistrate's findings as adopted by the trial court, it is clear that there was no abuse of discretion in ordering spousal support in the amount of $300 per month. The magistrate clearly considered the factors contained in R.C. 3105.18, including presenting specific findings on several of those factors. Although not every factor was set forth in the magistrate's findings, she was not required to enumerate findings on every factor. Additionally, the magistrate's decision reflected her consideration of Kelly's entitlement to a portion of Charles' retirement benefits.

{¶38} Given the vast difference in the parties' income and retirement benefits, the fact that Charles was the primary provider for the family, and that the

parties were married for twenty years, we find no error in the trial court's adoption of the magistrate's award of spousal support.

**{¶39}** Accordingly, Charles' second assignment of error is overruled.

**{¶40}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**